# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| **In re:** <br><br> **ESSEX CONSTRUCTION, LLC,** <br><br> Debtor. | Case No. 16-24661-TJC <br><br> (Chapter 11) |
| **BRADFORD F. ENGLANDER,** <br> Chapter 11 Trustee, <br><br> **Plaintiff,** <br><br> v. <br><br> **THE WHITING-TURNER CONTRACTING COMPANY,** <br> c/o Timothy J. Regan, Registered Agent <br> The Whiting-Turner Contracting Company <br> 300 E. Joppa Road <br> Towson, MD 21286 <br><br> **Defendant.** | Adversary No. _____ |

### TRUSTEE'S COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS AND FOR RELATED RELIEF

Plaintiff Bradford F. Englander (the "Trustee"), chapter 11 trustee for the bankruptcy estate of Essex Construction, LLC (the "Debtor"), respectfully files this *Trustee's Complaint to Avoid and Recover Preferential Transfers and for Related Relief* (the "Complaint") against the above-named defendant (the "Defendant") and in support thereof, respectfully states as follows:

### PARTIES

1. Plaintiff Bradford F. Englander ("Plaintiff" or "Trustee") is the chapter 11 trustee for the bankruptcy estate of the Debtor in the above-captioned bankruptcy case.

2. Defendant The Whiting-Turner Contracting Company ("Defendant" or "Whiting-Turner") is a Maryland corporation with its principal place of business in the State of Maryland.

## JURISDICTION

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicate for the relief requested is 11 U.S.C. §§ 502(d), 547 and 550.

4. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

5. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

6. Essex Construction, LLC (the "Debtor") engaged in construction. Specifically, the Debtor provided contractor and subcontractor services for various construction projects.

7. The Debtor maintained two bank accounts at M&T Bank ("M&T"), an operating account ("M&T OP Account") and a payroll account ("M&T PR Account"). The Debtor also maintained an operating account ("Industrial OP Account") at Industrial Bank ("Industrial").

8. From May 1, 2013 to October 30, 2016, the Debtor was 51% owned by Roger R. Blunt ("General Blunt"), after which point, the Debtor was 90% owned by General Blunt.

### The Debtor's Insolvency

9. At all times relevant herein, the Debtor was insolvent within the meaning set forth in section 101(32) of the Bankruptcy Code. At all times relevant herein, the Debtor's financial condition was such that the sum of its debts exceeded the value of its property, at fair valuation.

10. At all times relevant herein, the Debtor was engaged in business and in transactions for which any property remaining in its possession was unreasonably small capital.

11. At all times relevant herein, the Debtor intended to incur, believed it would incur, and in fact did incur, debts that were beyond its ability to pay as such debts matured.

12. The Debtor's distressed financial condition is evidenced in part by the facts described below. Such facts are examples only. The Trustee reserves the right to assert and adduce all evidence regarding the Debtor's financial condition.

### The Firstrust Litigation and Garnishments

13. In April 2014, Essex Real Estate Holdings, LLC, an affiliate of the Debtor, obtained two loans from Firstrust Bank ("Firstrust") for the purchase price of certain properties in Rockville, Maryland (the "Rockville Properties"); one in the principal amount of $3,240,000 and another in the principal amount of $1,260,000 (together, the "Firstrust Loan"). The Debtor guaranteed the Firstrust Loan, despite having no ownership interest in Rockville Properties Securing the Firstrust Loan. Essex Real Estate then defaulted on the Firstrust Loan. On July 13, 2015, Firstrust obtained two confessed money judgments jointly and severally against Essex Real Estate, the Debtor, General Blunt, and Jonathan Blunt; one judgment in the amount of $3,483,199.40 and the other in the amount of $1,335,911.14.

14. On October 11, 2016, Firstrust caused to be issued certain Writs of Garnishment against several of the Debtor's bank accounts, including the M&T OP Account and M&T PR Account. The attachment of the Writs of Garnishment to the Debtor's bank accounts precipitated the Debtor's filing for chapter 11 bankruptcy relief, as described more fully below.

### The Jemal Settlement and Consent Judgments

15. On or about May 19, 2013, the Debtor entered into an Office Lease Agreement (the "Oxon Hill Lease") with Jemal's Ikon, LLC, as landlord, for premises located in Oxon Hill, Maryland. On or about January 22, 2014, the Debtor entered into an Office Lease Agreement (the "Mellwood Lease") with Jemal's Mellwood, LLC (together with Jemal's Ikon, LLC, the "Jemal Parties"), as landlord, for premises located in Upper Marlboro, Maryland.

16. The Debtor breached the Oxon Hill Lease and Mellwood Lease. As a result, on January 26, 2015, the Jemal Parties filed suit against the Debtor in Prince George's County Circuit Court, initiating two proceedings against the Debtor, each for breach of contract. In June 2016, to resolve the litigation, the Debtor and the Jemal Parties entered into a Settlement Agreement (the "Jemal Settlement"). The Jemal Settlement required the Debtor, General Blunt, and Jonathan Blunt to pay $525,000.00 in seventy-two (72) equal installments commencing on April 15, 2016, and continuing for successive months thereafter. As additional consideration, the Debtor consented to judgment against it in favor of the Jemal Parties.

17. As contemplated by the Jemal Settlement, on June 10, 2016, a consent judgment in the principal amount of $561,681.80 was entered against the Debtor in favor of Jemal's Ikon, LLC. Also on June 10, 2016, a consent judgment in the principal amount of $99,204.20 was entered against the Debtor in favor of Jemal's Mellwood, LLC.

## The Debtor's Withholding Tax Liabilities

18. Beginning in 2010, the Debtor failed to remit withholding taxes to the Internal Revenue Service ("IRS") as required by the Federal Insurance Contributions Act ("FICA").

19. The Debtor's failure to remit such FICA withholding taxes to the IRS persisted throughout the years from 2012-2016, and resulted in the IRS filing a proof of claim in the Debtor's bankruptcy case in the amount of $2,946,970.13. Of this amount, the IRS claims $2,231,618.96 as a priority tax claim pursuant to section 507(a)(8) of the Bankruptcy Code.[1]

---

[1] On July 16, 2018, the IRS filed amended proof of claim 1-4 asserting a claim against the Debtor's bankruptcy estate in the amount of $3,048,861.17, of which the IRS claims $2,198,178.36 as a priority tax claim pursuant to section 507(a)(8) of the Bankruptcy Code.

**The Debtor's Operating Losses**

20.     In addition to the judgments against the Debtor, the Debtor reported operating losses on its tax returns for fiscal years 2015 and 2016—including a $4,275,289 loss in 2016.

21.     Furthermore, General Blunt has filed papers in a matter pending before Judge Xinis in the United States District Court for the District of Maryland in which General Blunt has taken the position that the Debtor had no income during the time periods relevant herein.  *See United States of America v. Roger R. Blunt*, Case No. 8:17-cv-00444-PX, clerk's docket no. 28.

22.     Based on the Debtor's internal financial records, the value of the Debtor's assets for the year ending December 31, 2014 was less than the Debtor's current and long-term liabilities during the same period.  The same is true for the year ending December 31, 2015.

23.     Notwithstanding the Debtors insolvency and mounting financial difficulties, including the Firstrust judgment and garnishments, the Jemal consent judgments, the IRS debt, and the Debtor's continued operating losses, the Debtor made the transfers described herein.

**The Debtor and Whiting-Turner**

24.     Beginning in late 2014, the Debtor and Whiting-Turner were involved in a construction project at the MGM National Harbor Casino (the "MGM National Harbor Project").

25.     On or about September 11, 2014, the Debtor and Jonathan Blunt, jointly, executed a promissory note (the "Note") in favor of Whiting-Turner in the principal amount of $50,000.  The $50,000 in funds were mobilization funding for the MGM National Harbor Project.

26.     The terms of the Note required the Debtor to repay the $50,000 principal, plus interest.  The Debtor committed to repaying the Note in six (6) monthly payments of $8,333.33 beginning six (6) months after commencing work on the MGM National Harbor Project.

27. Despite this payment arrangement, the Debtor failed to repay the Note on the terms specified therein. Instead, the Debtor made payments to Whiting-Turner as follows:

  i. On September 22, 2016, the Debtor issued check number 4710 from its M&T PR Account in the amount of $10,000 and made payable to Whiting-Turner.

  ii. On October 7, 2016, the Debtor issued check number 4846 from its M&T PR Account in the amount of $10,000 and made payable to Whiting-Turner.

  iii. On October 19, 2016, the Debtor issued check number 4974 from its M&T PR Account in the amount of $10,000 and made payable to Whiting-Turner.

28. The Debtor's records reflect that such payments were on account of the Note.

29. On or about September 14, 2014, the Debtor and Whiting-Turner entered into an Association Agreement for work to be performed on the MGM National Harbor Project.

30. On March 13, 2017, Whiting-Turner filed proof of claim 12-1 in the amount of $529,547.37 asserting a claim against the Debtor for breach of contract (the "Claim").

## The Debtor's Bankruptcy Case

31. On November 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code initiating the above captioned case in the United States Bankruptcy Court for the District of Maryland (the "Court"), Case No. 16-24661-TJC.

32. On December 5, 2016, the United States Trustee (the "U.S. Trustee") filed her *United States Trustee's Motion to Appoint Chapter 11 Trustee or, in the Alternative, to Convert Case to Chapter 7*, seeking appointment of a chapter 11 trustee. *See* Docket No. 70.

33. On March 13, 2017, the Court entered its *Consent Order Granting Motion to Appoint Chapter 11 Trustee* directing the U.S. Trustee to appoint a chapter 11 trustee in this bankruptcy case. *See* Docket No. 265. On March 17, 2017, the U.S. Trustee filed her

*Application to Approve Appointment of Chapter 11 Trustee* seeking approval of the appointment of Bradford F. Englander (the "Trustee") as chapter 11 trustee. *See* Docket No. 279.

34. On March 21, 2017, the Court entered its Order confirming the appointment of the Trustee as the chapter 11 trustee in this case. *See* Docket No. 288. Also on March 21, 2017, the Trustee filed his Line accepting appointment as chapter 11 trustee. *See* Docket No. 289.

## COUNT I
### (To Avoid Preferential Transfers Pursuant to 11 U.S.C. § 547(b) and Recover Preferential Transfers Pursuant to 11 U.S.C. § 550)

35. Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36. During the 90-day period prior to the Petition Date (the "Preference Period"), the Debtor made transfers to Whiting-Turner of not less than $30,000 (the "Preferential Transfers"). A schedule of the Preferential Transfers is set forth in **Exhibit A** attached hereto.[2]

37. The Preferential Transfers were transfers: (i) during the 90-day Preference Period; (ii) made to Whiting-Turner; (iii) for or on account of an antecedent debt allegedly owed by the Debtor before such transfers were made; and (iv) made while the Debtor was insolvent.

38. As a result of the Preferential Transfers, Whiting-Turner received more than it would have received if the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code, if the Preferential Transfers had not been made, and if Whiting-Turner had received payment on its debt to the extent provided by the provisions of the Bankruptcy Code.

39. The Preferential Transfers are avoidable under 11 U.S.C. § 547.

40. The Trustee may recover the value of such transfers under 11 U.S.C. § 550 from the initial transferee or the entity for whose benefit the transfers were made.

41. Whiting-Turner was the initial transferee of the Preferential Transfers.

---

[2] The Trustee reserves his right to amend the attached summary list of the Preferential Transfers to add additional transfers of which the Trustee may become aware during any discovery period.

## COUNT II
### (Disallowance of the Claim Pursuant to 11 U.S.C. § 502(d))

42. Paragraphs 1 through 41 are incorporated by reference as if fully set forth herein.

43. Whiting-Turner is an entity from which property is recoverable 11 U.S.C. § 550 and is a transferee of transfers avoidable under 11 U.S.C. § 547 as set forth above.

44. Whiting-Turner has not paid the amount, or turned over such property, for the Preferential Transfers for which Whiting-Turner is liable under 11 U.S.C. § 550.

45. Pursuant to 11 U.S.C. § 502(d), the Claim should be disallowed until the Preferential Transfers are repaid in full to Plaintiff.

WHEREFORE, in consideration of the foregoing, Plaintiff requests entry of a judgment:

(a) avoiding the Preferential Transfers under 11 U.S.C. § 547;

(b) authorizing Plaintiff to recover from Defendant the amount of $30,000, or such other amount as may be proven at trial (or other amount as may be avoided pursuant to entry of the judgment referenced herein), plus interest and attorneys' fees, under 11 U.S.C. § 550;

(c) disallowing the Claim (proof of claim 12-1 in the Debtor's bankruptcy case) until the Preferential Transfers are repaid to Plaintiff pursuant to 11 U.S.C. § 502(d); and

(d) granting such other and further relief as this Court deems just and proper.

*[remainder of page intentionally left blank]*

Dated:   October 22, 2018             WHITEFORD TAYLOR & PRESTON, LLP

*/s/ Nelson C. Cohen*
Bradford F. Englander, Esq., Bar No. 11951
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
Telephone: (703) 280-9081
Facsimile: (703) 280-3370
Email: benglander@wtplaw.com

and

Nelson C. Cohen, Bar No. 08994
7501 Wisconsin Avenue, Suite 700W
Bethesda, Maryland 20814-6521
Telephone: (301) 804-3618
Facsimile: (301) 804-3647
Email: ncohen@wtplaw.com

*Counsel for Bradford F. Englander,
Chapter 11 Trustee*

## EXHIBIT A
Preferential Transfers

| Issue Date | Account | Payee | Check# | Amount |
|---|---|---|---|---|
| 9/22/2016 | M&T P/R Acct | Whiting-Turner | 4710 | $ 10,000.00 |
| 10/7/2016 | M&T P/R Acct | Whiting-Turner | 4846 | $ 10,000.00 |
| 10/19/2016 | M&T P/R Acct | Whiting-Turner | 4974 | $ 10,000.00 |
| | | | | **$ 30,000.00** |